UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

MICHAEL BURRELL,

                Petitioner,

                                06 Civ. 788 (JGK)

    - against -

                                OPINION AND ORDER

JAMES WALSH, Superintendent,
Sullivan Correctional Facility,

                Respondent.

——————————————————————————

JOHN G. KOELTL, District Judge:

    This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by Michael Burrell, who is currently incarcerated in the Sullivan Correctional Facility in Fallsburg, New York.  Following a jury trial, the petitioner was convicted of one count of robbery in the first degree, in violation of N.Y. Penal Law § 160.15(3), and two counts of robbery in the second degree, in violation of N.Y. Penal Law § 160.10(1) and (2)(a).  Judgment was entered on March 13, 2003.  The petitioner was sentenced as a persistent violent felony offender to three consecutive terms of twenty years to life imprisonment.

    The petitioner's sole claim is that the evidence presented at trial was insufficient to sustain his conviction.  First, the petitioner argues that, upon the evidence presented at trial, no rational trier of fact could have found him guilty beyond a

reasonable doubt of using a dangerous instrument in furtherance
of the robbery, as required under N.Y. Penal Law § 160.15(3),
because a "much more likely scenario" is that the use of force
was in self-defense.  Second, the petitioner claims that there
was insufficient credible evidence to prove that he was "aided
by another person actually present," as required by N.Y. Penal
Law § 160.10(1).  Finally, the petitioner claims that the
testimony of two eyewitnesses was unreliable and consequently
insufficient to find him guilty of using force in the course of
a robbery, as required by N.Y. Penal Law §§ 160.15 and 160.10.
The petitioner argues that each of these alleged errors deprived
him of his constitutional right to due process of law under the
Fourteenth Amendment to the United States Constitution.

**I.**

The following is a summary of the relevant facts presented
at the petitioner's trial.  On the afternoon of April 22, 2002,
Morigue Coulibaly and his co-worker Mohammed Diallo were
unloading delivery boxes for Hamilton Palace, a department store
located on the corner of Broadway and 146th Street.  (Trial
Transcript ("Tr.") at 251-53.)  Coulibaly carried the last box
on his shoulder but before he could reach the entrance of
Hamilton Palace, the petitioner approached Coulibaly from behind
and punched him on the right side of the head.  (Tr. at 254-55.)

2

The petitioner then took the box Coulibaly was carrying and ran across Broadway, heading west. (Tr. at 256.) After Coulibaly called to Diallo for help, both men chased after the petitioner. (Tr. at 256-58.) After Coulibaly and Diallo crossed Broadway in pursuit of the petitioner, they noticed that another man, later identified as Steven Norman, was running alongside the petitioner and the two were talking. (Tr. at 258-59, 274, 445.) Coulibaly and Diallo caught up with the petitioner and Norman on the corner of 146th Street and Riverside Drive. (Tr. at 260.) Coulibaly then grabbed the petitioner's sweater and demanded his box back. (Tr. at 259, 261.) At that point, Coulibaly testified, and Diallo confirmed, that Norman pulled out a knife and thrust it at Coulibaly. (Tr. at 260, 348-351.) Coulibaly attempted to back away from Norman, with his hands up in front of him, but was nevertheless stabbed in the hand three times. (Tr. at 262, 351-52.)

While Norman attacked Coulibaly, the petitioner ran west into a park, abandoned his box, and then jumped over a fence. (Tr. at 262, 266.) After stabbing Coulibaly, Norman also ran into the same park, climbed over the fence, and ran after the petitioner. (Tr. at 262-66.)

Du, an employee of Hamilton Palace, arrived at the scene shortly after the stabbing and called the police. (Tr. at 264, 352-53.) Police Officers Kevin Lee and Julio Almodovar, of the

3

30th Precinct, testified that about five or six employees of
Hamilton Palace were at the scene when they arrived, including
Diallo and Coulibaly, and that nobody had any weapons with them.
(Tr. at 408-10, 444-47.)  Norman and the petitioner were
apprehended in the park, where they were hiding within fifteen
to twenty feet of each other.  (Tr. at 462-64, 435.)

Tammy Canty, a local resident, observed part of the crime
scene.  Canty saw men running away from Hamilton Palace.  (Tr.
at 371-75.)  She was also able to observe part of what
transpired outside her apartment window, which was in a building
facing the corner of Riverside Drive and 146th Street.  (Tr. at
377-78, 384.)  While making some phone calls in her apartment,
Canty heard a commotion outside but did not look outside for
some time.  (Tr. at 376, 393.)  Eventually, she looked outside
and saw a man with a knife, whom she could not identify, and
four other men standing around him, but not completely
surrounding him.  (Tr. at 378-79, 393-94.)  According to Canty,
the four men did not have weapons of any kind.  (Tr. at 378.)
Canty called 911 while observing the scene and, after placing
the call, she stepped away from the window.  (Tr. at 380, 401.)
During her testimony, Canty did not recall any physical contact
between the man with the knife and the men standing around him.
(Tr. at 405.)

In addition to Canty, other unidentified individuals called
911. (Br. of Def.-Appellant to App. Div., First Dep't, dated
June, 2004 ("Br. of Def.-Appellant") at 8, attached as Ex. A to
Aff. of Luke Martland, dated July 5, 2006 ("Martland Aff."); Br.
of Resp't to App. Div., First Dep't, dated Jan., 2005 ("Resp't
Br.") at 8, attached as Ex. B to Martland Aff.)  Two people
reported that a man with a knife was fighting, and three other
callers stated that more than one person had a weapon, referring
to knives, belts, and bottles.[1]  (Id.)  Canty was the only 911
caller who testified at the trial.

The petitioner and Norman were both convicted of one count
of robbery in the first degree and two counts of robbery in the
second degree.  (Tr. at 618-20.)  The petitioner appealed to the
Appellate Division, First Department, alleging that his
convictions of robbery in the first and second degree were
against the weight of the evidence, that there was insufficient
evidence as a matter of law to prove that petitioner or his co-
defendant had caused physical injury to Coulibaly, and finally
that the petitioner's sentencing as a violent felony offender
was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466
(2000).  (Br. of Def.-Appellant at 10, 14, 21.)  The Appellate
Division rejected these claims, concluding that "the verdict was

---

[1] There were no objections made to the admissibility of the 911
recordings. (Tr. at 470-71.)

based on legally sufficient evidence and was not against the
weight of the evidence.  There [is] no basis for disturbing the
jury's determinations concerning credibility.  The credible
evidence, and reasonable inferences that can be drawn therefrom,
established every element of each of the forms of robbery."
People v. Burrell, 789 N.Y.S.2d 887, 887-88 (App. Div. 2005)
(citations omitted).

The petitioner then applied to the New York Court of
Appeals for leave to appeal the decision of the Appellate
Division.  (Ex. D to Martland Aff. at 2.)  The petitioner sought
leave to appeal to the Court of Appeals to review all of the
issues raised in his Appellate Division brief.  (Id.)  On April
12, 2005, leave to appeal was denied.  People v. Burrell, 830
N.E.2d 325 (N.Y. 2005).

## II.

The petitioner has exhausted all state remedies, and the
petition for a writ of habeas corpus is timely pursuant to 28
U.S.C. § 2254.  The review of the petitioner's habeas corpus
claim is governed by 28 U.S.C. § 2254(d)(1).  Pursuant to
§ 2254(d)(1), the petitioner must show that the state court
adjudication "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United

States."  See Williams v. Taylor, 529 U.S. 362, 402-03 (2001);

Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001).

A state court decision is "contrary to" clearly established

federal law if:  (1) "the state court applies a rule that

contradicts the governing law set forth" in the relevant Supreme

Court precedent, or (2) "the state court confronts a set of

facts that are materially indistinguishable from a decision of

[the Supreme] Court and nevertheless arrives at a result

different from [Supreme Court] precedent."  Williams, 529 U.S.

at 405-06; Bonilla v. Portuondo, No. 00 Civ. 2369 (JGK), 2004 WL

1782174, at *3 (S.D.N.Y. Aug. 9, 2004).

A state court decision involves an "unreasonable

application" of clearly established federal law if it

"identifies the correct governing legal rule" based on Supreme

Court precedent but "unreasonably applies it to the facts" of

the case, or "unreasonably extends a legal principle from [the

Court's] precedent to a new context where it should not apply or

unreasonably refuses to extend that principle to a new context

where it should apply."  Williams, 529 U.S. at 407.  "The

'unreasonable application' clause requires the state court

decision to be more than incorrect or erroneous;" it must be

"objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75

(2003); see also Williams, 529 U.S. at 409, 412; Jones v.

Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Bonilla, 2004 WL 1782174, at *3.

In challenging the evidentiary sufficiency of his conviction, the petitioner bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). The petitioner is entitled to habeas corpus relief only if no rational trier of fact could find him guilty beyond a reasonable doubt based on the evidence presented at trial. Id. Thus,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Jackson v. Virginia, 443 U.S. 307, 319 (1978) (citation omitted). The court "must draw all reasonable inferences and resolve all issues of credibility in favor of the verdict." United States v. Zabare, 871 F.2d 282, 286 (2d Cir. 1989).


**III.**

Viewing the evidence in the light most favorable to the prosecution, the petitioner's contentions have no merit.

**A.**

The petitioner first claims that there was insufficient evidence to find beyond a reasonable doubt that he is guilty of robbery in the first degree.  In reviewing a conviction under state law, "[a] federal court must look to state law to determine the elements of the crime."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (alteration in original).  Pursuant to N.Y. Penal Law § 160.15(3), a person is guilty of robbery in the first degree "when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime... Uses or threatens the immediate use of a dangerous instrument...." (emphasis added).

The petitioner alleges that Norman stabbed Coulibaly in self-defense and that Norman did not use the knife in furtherance of a robbery but instead to facilitate escape from an angry mob.  The petitioner relies on several 911 calls that described a mob of people, with weapons ranging from knives to bottles, bats, and belts, attacking a man.  The callers who made these statements were not identified and they consequently did not testify at trial.  The petitioner also relies on the 911 call of Tammy Canty.  On the 911 tape, Canty stated that she believed fifteen to twenty minutes passed from the time she saw the man running with the box and the time she heard a commotion outside her apartment window.  (Pet. at 3.)  According to the

petitioner, Canty's taped statement contradicts Coulibaly's and Diallo's description of their chase of the petitioner, and supports the petitioner's proposition that Coulibaly and other Hamilton Palace employees present at the scene had time to grab makeshift weapons and fight with Norman.  (Id.)

Despite the petitioner's allegations, the jury could have rationally relied on the testimony of eyewitnesses Coulibaly and Diallo to find that Norman used force to facilitate the petitioner's escape with the box.  Moreover, Canty's sworn testimony at trial was that she did not see the men surrounding the man with a knife possessing any weapons.  The jury could well discount the unsworn statements of anonymous 911 callers in favor of the sworn testimony at trial.  This Court must construe the evidence "in the light most favorable to the prosecution" and must defer to the jury's determination of witness credibility and the jury's reconciliation of conflicting testimony.  See Jackson, 443 U.S. at 319.  Eyewitness testimony alone is generally sufficient to support a conviction.  See United States v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979).  An eyewitness's testimony is insufficient as a matter of law if it is "so incredible that no reasonable juror could believe him." United States v. Rodriguez, 702 F.2d 38, 43 (2d Cir. 1983) (quoting United States v. Shulman, 624 F.2d 384, 388 (2d Cir. 1980)).  Reviewing the evidence in the light most favorable to

the prosecution, it cannot be said that the Appellate Division's decision was contrary to or an unreasonable application of clearly established federal law.  Nothing in Coulibaly's and Diallo's testimony renders them unbelievable as a matter of law. Given all of the evidence, there was an ample basis for the jury's verdict.

**B.**

The petitioner also claims that there is insufficient evidence as a matter of law to demonstrate that he is guilty of robbery in the second degree.  Pursuant to N.Y. Penal Law § 160.10(1), a person is guilty of robbery in the second degree when "he forcibly steals property and when... [h]e is aided by another person actually present."[2]  According to New York law, in order for a person to be "actually present," that person must be sufficiently close to the defendant to be available "to render him aid during the actual commission of the robbery."  People v. Letterlough, 610 N.Y.S.2d 614, 615 (App. Div. 1994) (quoting People v. Hedgeman, 517 N.E.2d 858 (N.Y. 1987)).  Further, a person is actually present if he is within the vicinity of the crime scene to observe events and is "in a position to render

---

[2] The petitioner was also convicted of a violation of N.Y. Penal Law § 160.10(2)(a), which provides that a person is guilty of robbery in the second degree when "he forcibly steals property and when... [i]n the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime... [c]auses physical injury to any person who is not a participant in the crime."

immediate assistance to the codefendant in the event that force
or the threat of force proved necessary to retain the stolen
property." People v. Carr-El, 732 N.Y.S.2d 256, 258 (App. Div.
2001).

Viewing the evidence in the light most favorable to the
prosecution, the jury could have reasonably based its conclusion
that Norman was "actually present" on eyewitness testimony.  The
petitioner and Norman were seen running together immediately
after the petitioner stole the box.  According to Coulibaly, the
petitioner joined up with Norman immediately after the
petitioner crossed Broadway, running away from Hamilton Palace.
(Tr. at 258, 315-16, 320.)  Coulibaly stated that he heard
Norman and the petitioner talking as they ran together, although
he could not hear the specifics of the conversation.  (Tr. at
258, 315-16.)  When Diallo arrived in front of Canty's
apartment, having run after Coulibaly to help get the stolen box
back, he also observed the petitioner with Norman.  (Tr. at
348.)  The petitioner relies on Canty's testimony to show that
only the petitioner, without Norman, was running away from
Hamilton Palace.  Canty, however, did not observe closely who
was running away from Hamilton Palace and could not identify the
individuals.  (Tr. at 375.)  Canty remembered two or three
people running away from the store, but her attention was

directed to a conversation she was having with a neighbor. (Tr. at 373-75.)

Based on this evidence, a rational trier of fact could have concluded that Norman used the knife to stab Coulibaly's hand. The jury also could have concluded that Norman stabbed Coulibaly in order to assist the petitioner in retaining the box, instead of using the knife in self-defense. Consequently, the Appellate Division did not err in upholding the petitioner's conviction on robbery in the second degree in violation of N.Y. Penal Law § 160.10(1).

## C.

Finally, the petitioner alleges that there is insufficient evidence to find that he used force to take the box from Coulibaly. The petitioner's claim is unfounded.

A rational jury could have reasonably concluded that the petitioner used force in obtaining control of the box. Pursuant to Penal Law §§ 160.15 and 160.10, robbery in the first or second degree requires that a person "forcibly steal property." However, federal courts "are not free to reassess the... specific credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution." Vera v. Hanslmaier, 928 F. Supp. 278, 284

(S.D.N.Y. 1996); see also United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993).  Both Diallo and Coulibaly testified that the petitioner forcibly grabbed the box from Coulibaly and punched Coulibaly on the right side of the face when doing so. (Tr. at 254-55, 345-46.)  The petitioner claims that Coulibaly's and Diallo's testimony is incredible because Canty testified that she saw a man "run out" from Hamilton Palace, thereby contradicting Coulibaly and Diallo's assertion that the crime occurred outside the store.  (Pet. at 5; Tr. at 254-55, 346, 399-400.)  Canty's attention, however, was not directed at Hamilton Palace at all times, and she did not actually see how the petitioner obtained the box.  (Tr. at 375, 390, 400.) Moreover, the jury could credit the direct testimony of Coulibaly and Diallo.  Resolving all inferences and questions of credibility in favor of the prosecution, the jury could have concluded that the petitioner used force to rob Coulibaly of the box.

<u>**CONCLUSION**</u>

For the foregoing reasons, this petition for habeas corpus is **denied**.  The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of the denial of a constitutional right.

See 28 U.S.C. § 2253(c)(2).  The Clerk of the Court is directed

to enter Judgment denying the petition and closing this case.


SO ORDERED

Dated:    New York, New York
          April 17, 2007

                                    John G. Koeltl
                          United States District Judge

15